LTS Scale Company, Inc. v. LTS Scale Company, Inc.  v. LTS Scale Company, Inc. May it please the Court, Grant Peters on behalf of ACME Scale. What went wrong and why we are here today is that the Board erred by considering the table with rollers, in the Burgoyne reference, to be a material handling vehicle in the ACME patent. The Board used this misinterpretation of the claims, the claim construction, and to reverse the numerous PTO examiners' clearly and reasonable view that the original patent, and to overturn the decision by the PTO. What are the boundaries for the term material handling vehicle? What is your conception of what that term means and where is the support for that? Material handling vehicle is determined by the claims in the specification in the ACME patent. Can you give me the words? What are the words? Sure. How do you translate material handling vehicle? Material handling vehicle, if we refer to the ACME patent, that's at A36, column 2, line 38-39. The term is very clearly stated here. Broadly included. Material handling vehicle is meant to broadly include transport vehicles, first and foremost. As an example, but not limited to, a forklift truck, a flatbed truck, and a pallet truck. So is it fair to read that as meaning that material handling vehicle broadly includes transport vehicles, but it's not limited to just transport vehicles. It can be something else. Or are you saying it's got to be just a transport vehicle rather than anything under that umbrella? It's our assertion that that is how the inventor defined what a material handling vehicle is, and she went on to, Ms. Kinsley went on to identify. I think the spec doesn't say material handling vehicle is a transport vehicle, which includes but is not limited to. It does say meant to broadly include, but she was trying to achieve some broadening as might be needed to assert a patent, but identifying transport vehicles. It's our assertion that this table with rollers is not a transport vehicle. I have a podium in my office. I was practicing to get ready for this argument, and I noticed it had wheels. It's a piece of furniture with wheels. I can move it. I can move it over to the corner to get out of the way of the office. I can move it back to the center, but it's not a vehicle by any stretch of the imagination. Like a piano with wheels or a barbecue with wheels or a judge on wheels. I have to laugh, Your Honor, because I have two other examples, and one is a piano with wheels like I have at my home, and one is a chair because those are definitely pieces of furniture, and we're not arguing that the Burgoyne reference is a table and that it has rollers. It's clear in its specification as to what that is, but it's not a vehicle. It was never intended to provide any vehicular activity of any sort. The only thing that supports you the most is the such as because what it's describing as transport vehicles are things that we would normally think of as transport vehicles. With further clarification as to the term truck, referring to truck as being a type of transport vehicle. So I'm still hung up on broadly include. Maybe we should think of it as transport vehicles and vehicles that are akin to transport vehicles. Transport vehicles, but again, I think the operative terms here are that... It's not transport vehicle, it's transportation vehicle which has other implications. Excuse me, yes. But I will say that we're focusing on vehicles, and I think the ordinary meaning of the term vehicle would be something that you use for transportation of things, its intended purpose. It's based on the intrinsic evidence in the ACME patent. I think it's very clear, the numerous references to the term truck and vehicle, that it was intended for that type of purpose. Is a wheelbarrow a vehicle? I would argue a wheelbarrow is not truly a vehicle. It can transport product from location A to location B. I would say on a spectrum of items, the furniture in Burgoyne being at one end, and perhaps the ACME patent at the other end, a wheelbarrow would fit on that spectrum perhaps, yes. But I'd like to say that I think it's important to note that in attempting to assert the Burgoyne reference, I think LTS missed the point that Burgoyne actually teaches away from the use of this thing as a vehicle. I think it's pretty clear that throughout LTS, excuse me, throughout the Burgoyne reference, it identifies severe constraints with regard to the use of this thing. It also says that it's passive. Now, I won't get into the passive-active issue that was in the briefs, but it very clearly says, A496, citing from the Burgoyne reference, column two, lines 58-59, that the system according to the invention has the advantage, it's stating one of its advantages, that it is a passive system, undisturbed by the surrounding industrial environment. So it's identifying several things that teach away from being used as a vehicle. And clearly, I would say that it's reasonable to conclude that there is no vehicular activity associated with Burgoyne. How do you understand the PTO rules which indicate that you maybe have to file a request for rehearing? Yes. Before you can come to the Federal Circuit? Sure. What's your interpretation of those rules? What's going on? With request to the issue of jurisdiction and perhaps exhausting the remedies below, we believe that ACME has exhausted its remedies below, before the Board. The rehearing claims were rejected based on the exact same references. The Board rehearing decision stated, it is deemed to incorporate earlier opinion reflecting the Board's decision for appeal, and the Board specifically cites rule 37 CFR section 41.79D. And in 41.79D it says, a rehearing decision is final for purposes of judicial review. The rules do not require the filing of a request for a rehearing from a rehearing, but the rules do require filing a request from an initial Board review. This is similar to the case in Itochu, in which it was a commerce case, but in that case it was found that there was no expectation that there would be a different result on the rehearing. In this case, that was maybe, I would have thought, if I'm remembering it right, a somewhat more exceptional case to what I think you have, which is maybe a fairly ordinary case, which is the idea that you'd have to seek rehearing upon rehearing. Yeah. The exception in Itochu was pretty narrow. I agree with you, Your Honor, but I would say that this is a somewhat exceptional case. It certainly is to my client. Ms. Kinsley is a small business person who came up with the idea. No, I was just suggesting you don't need a principle as... Correct. You don't need to rely on Itochu to say the regulations here don't require rehearing from a rehearing decision. Right. There's a difference between being given an opportunity and being required. Correct. And we believe, based on the rules, if you look at 41.79D, the rule clearly states that the party may request further reconsideration, but there's no expectation that we would get a different result. It's the same case. The same facts were before the board. The same references were being asserted. And, frankly, we think it would be futile to go back. Keep in mind, this is a case in which the reexamination took a full year. It was 21 months on appeal. It was another 11, almost 12 months on the rehearing. And now we're going up on this appeal. If we had gone through yet another round or more, who knows how many rounds you'd have to go around on the rehearing, it'd be another 11 months. It'll be a decade from the time Ms. Kinsley files her patent application until we get a determination on this case. And it's important for her business to move forward with regard to the right that she has in her patent. We're not even close to jar and dice and jar and dice. With regard to Ms. Kinsley's business, her business, again, as I said, is a small business who is trying to assert the rights in a patent that she secured through the United States Patent and Trademark Office. There were four examiners throughout this process that reviewed this application. Both the initial application as well as the re-examination. There were supervisors looking over the shoulders of those examiners. There was quality control in place. On the re-examination, there were folks who were reviewing the work of Examiner Brown, who subsequently has become a board judge herself. I'd be surprised and shocked that all those people who are so educated in this process would take an unreasonable position, all of them, to not find Burgoyne to be a relevant reference. In fact, they found Burgoyne to be irrelevant by not asserting it. There were any number of opportunities that they could have asserted it, but they didn't. Burgoyne was a reference that was asserted by Ms. Kinsley in the IDS when the application was originally filed and never considered to have any merit by the examiners. If there are no other questions, I'd like to reserve the remaining time for my rebuttal. Thank you, Your Honor. I'm Rich Agarwal from Eckert Siemens, chairing in the lot. I'm here on behalf of the Apple ELTS scale today. Some of the things I'd like to talk about are definitely that this Court does not have jurisdiction over this appeal. What ACME did was they filed an appeal, but it was not based on a final appealable decision, so the Court does not have jurisdiction. Additionally, ACME has waived because it failed to challenge several bases of claim rejections. Weren't those all bases that included a reliance on Burgoyne? No, Your Honor. Actually, the three unchallenged bases of rejection were rejections of all of the claims on the ground of Burgoyne in combination with a forklift patent, one of the secondary references. Sure, but if we hypothetically were to reject the Board's construction and understanding of the Burgoyne references teaching a material handling vehicle or suggesting a material handling vehicle, there is no reasoning either by a Board or a patent examiner that relies on any of those secondary references to fill that missing piece and combine it with the remaining teachings of the prior art to render the claims obvious. Is that fair to say? I think that... If I'm wrong, point me out where I'm wrong in the record. What I would say is those arguments have been waived, Your Honor, because ACME never challenged that. When the first Board decision came out, the Board said, you have these five bases of rejections of your claims and it expressly set them forth in ACME's principle brief. It only challenged the first two. If they rip out one of the legs to all the rejections, then all the rejections fall down. I disagree with your respect, Your Honor, because... Why don't you just say the wheels come off? If the three bases of rejection that ACME has not challenged do not rely upon Bergoin disclosing the material handling vehicle, the three bases of rejection that ACME has left unchallenged combine Bergoin in combination with a forklift... Sure, but nobody, neither an examiner or the Patent Board, ever relied on that aspect of those secondary references in building some kind of 103 rejection. Well, I set forth enough of those arguments while I was arguing... Right, you would like us to consider them in the first instance. Well, what I would say is that the Board actually adopted all of those rejections for the reasons I set forth when I argued those. And so, therefore, I think it would be very reasonable to conclude that the Board felt that those were sufficiently argued instead of setting forth all of the things that I had set forth over the course of well over a year. Well, go on with your other arguments. And I would simply say that, Your Honor, that much of... In the broader scheme of things, there are an enormous spectrum of devices that fall within the broadest reasonable interpretation of a material handling vehicle, all the way from the wheelbarrow and hand truck that Patterson disclosed as being material handling vehicles. How would I... What's the best way to characterize the Board's understanding of the term material handling vehicle? Would it be any device that has wheels that can... is capable of holding on to some product? In the first Board decision, the Board agreed with the examiner that the device in Brook One was a vehicle, and the Board... Right, but I'm just trying to understand, what's the conception that the Patent Board had of material handling vehicles? Is it fair to say it the way I said it? Any device with wheels that is capable of holding or... I don't know that I can actually... The first Board decision and the second Board decision were more focused on what was in front of it. To more broadly construe those, possibly. I'm sure that either of us, any of us, could come up with examples at the fringe where there might be a wheel on a playground toy that children can spin. That's not necessarily a vehicle. However, I would say that the Brook One reference is nowhere near the fringe. It's squarely in the midst of... I think it's pretty fringy. You know, when I have in my garage a ping-pong table, and it looks like Borgoyne's table, and the ping-pong table has wheels. And I would say it defies common sense to call my ping-pong table a vehicle. I would also suggest to the Court that the Court owes deference to the Board because the factual findings by the Board that Borgoyne discloses and teaches and suggests a material handling vehicle were supported by substantial evidence. It's clear that ACME would like to relitigate that issue here, but this is the Court of Appeals. ACME's already lost, and the standard of review is whether or not substantial evidence supported the findings by the Board. On a claim construction question like this one, which is about as far from technical as you can get, I think we get to actually decide that to know. Your Honor, anticipation of this question is fact, as both ACME and... I'm sorry, maybe I've misremembered. Material handling vehicle is... Is that in the claim or not? It's a recitation in the claim, exactly. And the Board's finding of such a thing in Borgoyne was dependent on its... Factual findings. ...on its understanding of what this claim meant. And at least for me, it seems beyond the bounds of common understanding of a technical term to think of the term vehicle here as covering something that can move but whose function is not meant to be performed while moving and whose function is not the transportation of something sitting on it or in it. I would disagree, Your Honor. Let's play a common intelligence test game that's given to elementary school children. Choose the one that shouldn't be here. Forklift truck, flatbed truck, pallet truck, or Judge Chen's ping-pong table. Your Honor, I would suggest that this panel is far beyond elementary type questions about that nature. Yes, clearly I think it would be this last choice, but the spectrum of material handling vehicles are typically dictated. The various configurations of these devices are dictated by what is intended to be carried. They didn't just say, though, transportation vehicles. They said, such as, for example, and then they list three types of commercial transportation vehicles. That's correct, but I would also note that ACME has already stated on the record that the term material handling vehicle is unambiguous. And in that situation, the claims are interpreted according to their broadest reasonable interpretation. Resort to the specification. Reasonable. Reasonable, exactly. Broadest reasonable. Broadest reasonable interpretation inconsistent with the specification. That's correct. So, maybe a ping-pong table is inconsistent with the specification. When the specification talks about pallet trucks, forklifts, etc. Let me put it another way. If you're driving down Highway 10 in California and a flatbed truck goes by you and then a ping-pong table, are you going to call the California Highway Patrol? Your Honor, ACME has sought, as I said, to re-litigate the issue. But again, it's seeking to attempt to develop a highly specialized definition of the term material handling vehicle that's specifically calculated to avoid the application of Breguon. And there's absolutely no basis in the record for suggesting that the term material handling vehicle should be interpreted in any fashion other than its broadest reasonable interpretation. Now, the Board has concluded that the Breguon device falls within the scope of the broadest reasonable interpretation of the material handling vehicle. And the findings of fact were supported by substantial evidence. I would respectfully submit to you that the question of anticipation is a factual inquiry. Claim interpretations are legal interpretations. For instance, obviousness is a legal interpretation that's reviewed de novo. However, its underpinnings are factual. All the facts that would go into an obvious analysis are analyzed according to the substantial evidence standard. And in this case, the Patent Office determined with substantial evidence that the device in Breguon is a material handling vehicle. Not only it is, but Breguon also teaches and suggests a material handling vehicle. And the efforts by ACME to relitigate the issue here get back to my original point that this Court really does not have jurisdiction. ACME should have argued all of this to the Patent Office. And I dispute what my colleague says with regard to the decision being final. What the CFR provision that he cited states is that it is final except when noted otherwise in the decision on rehearing. It goes on to say, if the Board opinion reflecting its decision on rehearing becomes in effect a new decision, that's exactly the situation we have here. This was a new decision. Any party to the appeal may, within one month of the new decision, file a further request for rehearing of the new decision. Your Honor, it's permissive only from the standpoint that perhaps the party might decide to go home. If a party wants to protect its appellate rights, it needs to do so. To me, the PTO sort of understands when it demands that a party file a request for rehearing, it demands that when the Board elects to install a new grounds of rejection. When there's a new grounds of rejection installed, then it commands that parties must file a request for rehearing. They didn't use those words, that terminology here in 4.7 now. But the Board in its secondary decision said that all parties had one month within which to request rehearing. The Board went on to give a citation to 41.77B, which controls re-prosecution with amended claims. And additionally, 37CFR 41.81 states that there is no appeal from the Board to the Federal Circuit until all parties' rights to request rehearing have been exhausted. Not permissive rights if they choose to attempt to re-litigate something in the Federal Circuit regardless of the standard of review. It says that they must be exhausted. Here they were waived, along with the arguments that ACME has failed to raise with regard to... I think the Patent Board wrote a rule that commands that every time they write a decision, they want to see a request for rehearing. I don't think so at all, Your Honor. That's your reading of 41.81. Actually, my reading is that in view of the fact that the Board expressly said, this is in effect a new opinion and also incorporated its previous opinion, I think that if the Board had not been interested in seeking rehearing, it would have not bothered to say it was a new opinion. The point is that, again, as I said before, ACME is seeking to re-litigate here the issue. ACME has already lost. The issue is whether or not the Board had substantial evidence to support its conclusion that Vergois discloses and teaches and suggests a material handling vehicle. And it does. And as I had said before, the CFR 41.81 says that there is no appeal possible until everyone's rights to request rehearing have been exhausted. Further, as I had mentioned, the three grounds of rejection that ACME has not challenged are dispositive of this appeal because they render moot, quite honestly, the grounds that ACME has challenged, which are the grounds of rejection on the ground of anticipation over Vergois and on the ground of obviousness individually over Vergois. And I would also note that ACME cannot distinguish Vergois by trying to argue that its device or that its method involves dimensioning of an article while a material handling vehicle is moving or is in motion. Those arguments are not commensurate with the claims that are in front of this Court. I was perplexed for a long time and it finally occurred to me that those dozen arguments seem to be related to an embodiment of the ACME patent that is not in front of this Court. Those claims have nothing whatsoever, the claims in front of this Court have nothing whatsoever to do with dimensioning an article while a material handling vehicle is moving or is in motion. What does the word active mean in the claim? Well, active is actually not in the patent at all, Your Honor. And to Mr. Peter's point that this application was thoroughly examined with supervisors, none of the examiners ever noticed the fact that the word actively, which is unquestionably the point of novelty of Claim 9, there is no question whatsoever because the word active and actively added to Claim 9 resulted in its allowance. But none of the examiners ever noticed that that word is completely absent from the ACME patent. So for the reasons I've mentioned, I would ask that the Court reject the appeal on the ground of lack of subject matter jurisdiction, that additionally the decisions by the Board be affirmed both because of waiver by ACME of the end challenge rejections rendering its points moot, and also would ask that the Court affirm the Board's findings based upon the substance of the matter and that there's a standard of review that the Board's findings were represented and based upon substantial evidence. Thank you very much. Thank you, Counsel. Thank you. Earlier I said that we're here because the Board made a mistake. They erred in deciding that the table with rollers in Burgoyne is a material handling vehicle. I'd like to clarify that. We're here because my friend, his client, brought this case as a re-examination. They chose on that re-examination which references to assert in the re-examination and took their best shot at it from the start. In a re-examination, you have to identify the substantial new question of patentability. And Mr. Agarwal and his colleagues, they're bright and thorough attorneys. They have the strength of a well-known firm behind them. They have a client who has funded this activity. And the best that they could find, the best reference their searchers could find, was a patent that had already been cited by the original applicant. So it's our position that they had their opportunities to look for any references they wanted. They couldn't find anything better than something, with all due respect, analogous to a ping-pong table. With regard to dealing with the various issues, each one of the individual references, excuse me, rejections that were asserted require the inclusion of Burgoyne, as I think the Court has already stated. Other references that were included in the combinations, there's a 102 reference, excuse me, rejection based on Burgoyne. There's a 103 rejection based on Burgoyne. But the combination references, Burgoyne plus Berg, Riddling, or Anderson, Riddling and Anderson very clearly include passive devices that were considered during the prosecution. Passive meaning the barcode or scanner used in Riddling or the RFID. The combination of Berg and Burgoyne doesn't resolve any other issues as well because there's no incentive to combine those references. The teaching away that occurs as a result of reading Burgoyne eviscerates the combination of that. Moving along, with regard to the standard of review, yes, the standard of review is de novo, and especially in a situation where the factual issues are so straightforward, I think this Court has the ability to review de novo because it is a legal issue. While there is a question of factual issues under 102 or 103, all those determinations hinge on a reasonable interpretation, what a reasonable mind would consider. Again, I have to laugh at your comment about, in a positive way, about one thing is not like the other. I will often use that in training new attorneys in my firm as to these types of rejections and what's reasonable. I think in this case it is unreasonable to try to assert the Burgoyne reference as a material handling vehicle. Just to close out, one other issue that's lingering in our mind and I think shows the lack of support of Burgoyne in this case is that throughout the briefs, and I don't understand why this is occurring, but LTS relies on the term platform and wheels as opposed to table and roller set forth in Burgoyne. Burgoyne very clearly identifies a table, 21, with rollers, very clearly cited in the patent. There is a platform identified there, but that's a separate component of the wheeled table, excuse me, table with rollers. So I suspect that that's trying to make an attempt to try to further differentiate their argument from the Burgoyne reference. Based on all of the arguments and briefs that we've submitted to this court, we respectfully request that you overturn the board and pass this patent to issuance so that Ms. Kinsley can proceed to enforce this patent against LTS. Thank you very much, Your Honor. Thank you.